## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: | ) In Proceedings under Chapter 7 |
| | ) |
| Paramjitinder S. and Surinderjit K. Dhillon, | ) Case No. 10-41700 |
| | ) |
|     Debtors. | ) |
| | ) Adv. No. 11-4015 |
| George and Effie Papdopoulos and | ) |
| John and Susan Karayanis, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| Paramjitinder S. and Surinderjit K. Dhillon, | ) |
| | ) |
|     Defendants. | ) |

## OPINION

This matter comes before the Court on the Debtors' motion for leave to disqualify

attorney Darrell Dunham. The Debtors seek to disqualify Dunham as the attorney for creditors

John and Susan Karayanis in both the underlying bankruptcy case and the adversary complaint.

The Court held a hearing on the matter on July 20, 2011. The Debtors appeared through their

attorney, Matthew Benson. Creditors John and Susan Karayanis appeared through their attorney,

Darrell Dunham. Creditor Ramneesh Prabhaker appeared through his attorney, Timothy Daniels.

The Court heard testimony from Susan Karayanis, Ramneesh Prabhaker, and Darrell Dunham.

For the reasons that follow, the motion is granted.

## Facts

An examination of the relationship between the parties and Mr. Dunham is important to

understanding the instant motion. There is bad blood between the Debtors and creditors

Prabhaker and the Karayanises. Both Mr. Prabhaker (11-4014) and the Karayanises (11-4015)

have filed complaints against the Debtors objecting to their discharge and to the dischargeability of debts. The disputes center around a lease on an Indian restaurant operated by the Debtors. The restaurant folded, which precipitated the Debtors' bankruptcy filing. The Karayanises allege that the Debtors removed fixtures from the restaurant, in violation of the lease, once it became clear that it would not survive. Mr. Prabhaker alleges that the Debtors defrauded him out of money loaned on the premise that he would become a partner in the restaurant. The Karayanises have chosen Mr. Dunham to represent them in both the underlying bankruptcy case and the adversary proceeding.

According to Mr. Dunham's testimony, his lawyer-client relationship with the Karayanises began sometime before 2007. Susan Karayanis was employed in Mr. Dunham's law firm as a part-time paralegal. Mr. Dunham represented John Karayanis in several disputes with the city of Carbondale. The Karayanises appear to have owned a restaurant, in partnership with fellow creditors George and Effie Papdopoulos. Mr. Dunham also developed a relationship, though not what appears to be of the lawyer-client variety, with Mr. Prabhaker by dining frequently at Mr. Prabhaker's restaurant in Carbondale. When Mr. Prabhaker sought to open a new restaurant, Mr. Dunham testified that he thought that he gave Mr. Prabhaker the Karayanises' contact information, knowing that they were considering selling their restaurant. Mr. Dunham's affidavit from a state court action that was attached to the Debtors' motion states unequivocally that he did this. Exactly how Mr. Prabhaker became connected to the Debtors is unclear, but it seems as though they had agreed (or thought they had agreed, by the looks of Mr. Prabhaker's complaint) to join forces in opening a new Indian restaurant. The Karayanises decided to negotiate with Debtor Paramjitinder Dhillon and Mr. Prabhaker on a lease with the option to purchase.

Mr. Dunham testified that he put the parties in touch with each other to arrange an inspection of the facility.  This occurred on December 2, 2006.  That same day, they all gathered at Mr. Dunham's office to negotiate the lease.  Susan Karayanis testified that she and her husband felt comfortable handling the lease negotiation without the aid of legal counsel because they had been real estate brokers and had done deals of this sort before.  Neither Mr. Prabhaker nor the Debtors used separate counsel, either.

Even though Mr. Dunham had a prior lawyer-client relationship with the Karayanises, and even though Mr. Dunham testified that he felt that he had a "fiduciary" relationship with Mr. Prabhaker, he "made it very clear to the parties [that he] was going to be a draftsman and wasn't going to give advice as to whether the deal was sound or unsound."  At one point in the hearing, Mr. Dunham testified that he represented no one.  At another point, he testified that he represented everyone.  Once the parties had agreed on the terms of the lease, Mr. Dunham reduced them to writing.  Mr. Dunham testified that only when it came time to sign the lease did he learn that Mr. Prabhaker would not be signing it in partnership with the Debtors.  Only the Karayanises and the Debtors signed the lease.  Mr. Dunham testified that he did not think that Paramjitinder Dhillon was reliable, and he "cross-examined" Mr. Prabhaker about whether Mr. Dhillon could be trusted.  After the restaurant went under, both it (10-40922) and the Debtors as individuals filed for Chapter 7 relief.

<u>**Discussion**</u>

The Debtors rely on two rules in their effort to disqualify Mr. Dunham.  In their motion, they argue that he acted as a third-party neutral in the negotiation and is disqualified by the rule that limits an attorney's representation of a person in connection with a matter in which the attorney was a third-party neutral, unless all parties give their informed consent.  The Debtors

have not given their consent to Mr. Dunham's representation, and they argue that the adversary

complaint filed by the Karayanises is connected to the lease negotiation because there is a

dispute about what constitutes "fixtures."  At the hearing, the Debtors also raised an alternative

rule of disqualification.  They argued that Mr. Dunham represented all the parties in the drafting

of the lease and must be disqualified because he is now representing someone whose interests are

materially adverse to their own in the same or a substantially related matter.  All of the Illinois

Rules of Professional Conduct apply to all attorneys who appear before this Court.

**A. Third-Party Neutral**

The Debtors' first argument is rooted in Illinois Rule of Professional Conduct 2.4(a): "A

lawyer serves as a third-party neutral when the lawyer assists two or more persons who are not

clients of the lawyer to reach a resolution of a dispute or other matter that has arisen between

them. …"  The comments to the rule help clarify the circumstances under which a lawyer is a

third-party neutral.  "A third-party neutral is a person, such as a mediator, arbitrator, conciliator,

or evaluator, who assists the parties, represented or unrepresented, in the resolution of a dispute

or *in the arrangement of a transaction*.  Whether a third-party neutral serves primarily as a

facilitator, evaluator or decisionmaker depends on the particular process that is either selected by

the parties or mandated by a court."  ILL. RULE OF PROF'L CONDUCT 2.4 cmt. 1 (2010) (emphasis

added).  "A lawyer who serves as a third-party neutral subsequently may be asked to serve as a

lawyer representing a client in the same matter.  The conflicts of interest that arise for both the

individual lawyer and the lawyer's law firm are addressed in Rule 1.12."  ILL. RULE OF PROF'L

CONDUCT 2.4 cmt. 4 (2010).

A lawyer is disqualified from representing a client "in connection with a matter in which

the lawyer participated personally and substantially as a judge or other adjudicative officer or

law clerk to such a person or as an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent." ILL. RULE OF PROF'L CONDUCT 1.12 (2010). "Although lawyers who serve as third-party neutrals do not have information concerning the parties that is protected under Rule 1.6 [prohibiting the disclosure of confidential information gained from the lawyer-client relationship], they typically owe the parties an obligation of confidentiality under law or codes of ethics governing third-party neutrals." ILL. RULE OF PROF'L CONDUCT 1.12 cmt. 3 (2010). Thus, if Mr. Dunham participated personally and substantially as a third-party neutral in the negotiation, he is disqualified from representing the Karayanises without the Debtors' informed consent.

Mr. Dunham connected Mr. Prabhaker and the Debtors, who were looking for a restaurant to buy, with the Karayanises, who were looking to sell their restaurant. He testified that he contacted the Karayanises about making their restaurant available for inspection by the Debtors and Mr. Prabhaker to facilitate the sale. He then agreed to draft the lease according to the terms to which the parties agreed. He asked questions to clarify the terms to which the parties were agreeing. This fits in squarely with the definition of third-party neutral as one who arranges a transaction as found in comment 1 of Rule 2.4. Mr. Dunham also testified that he had one or more conversations with Mr. Prabhaker about the trustworthiness of Paramjitinder Dhillon as a business partner. Mr. Dhillon asked him about the reliability of the Karayanises. It is undisputed that Mr. Dunham heard discussions regarding the lease negotiation. These activities potentially exposed Mr. Dunham to confidential information from the parties. The Court believes that Mr. Dunham acted as a third-party neutral in the negotiation. He is therefore disqualified from representing the Karayanises without obtaining the Debtors' informed consent, which does not appear to be forthcoming.

The Court is also worried about another facet of Mr. Dunham's participation in the negotiation.  Rule 3.7 prohibits an attorney from representing a client "at a trial in which the lawyer is likely to be a necessary witness."  At this early stage of the proceedings and before there has been much action on the adversary complaints, mostly due to the delay tactics employed by the Debtors, it is not clear whether Mr. Dunham will be a 'necessary witness.' Nevertheless, it seems more than possible that Mr. Dunham may be called to testify as to the nature of the negotiation and the parties' understanding of the terms contained in the lease.  To prevent any further delay by the Debtors by calling Mr. Dunham as a witness and forcing the Court to revisit this issue down the road, Mr. Dunham must be disqualified.

**B. Common Representation**

The Debtors' alternative theory of disqualification comes from the idea of 'common representation.'  Common representation occurs when an attorney represents all of the parties in a transaction.  "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."  ILL. RULE OF PROF'L CONDUCT 1.9 (2010).  This rule is enforced even if the former representation occurred in the 'common representation' scenario.

Mr. Dunham testified that he told the parties that he was not representing any of them during the *negotiation*.  He testified that if Mr. Prabhaker was not involved, he would have said that he "was only representing John and Susan [Karayanis]."  Since Mr. Dunham believed that Mr. Prabhaker would be signing the lease, however, he did not say that.  He said that he represented everybody that was part of the negotiation, including Paramjitinder Dhillon "to the

extent that [he] thought [Dhillon] was a partner with [Prabhaker]," in the *drafting* of the lease "in the sense that [he] was rendering them a service and memorializing what they had agreed on."

If Mr. Dunham represented all parties in the drafting of the lease, he is disqualified from thereafter representing the Karayanises in this dispute.  The Karayanises' interests are materially adverse to those of the Debtors; they have filed a complaint objecting to the Debtors' discharge and to the dischargeability of their debt.  The matter appears to be the same or substantially related as it involves a disagreement concerning the lease and the terms contained therein.  The Debtors have not given their informed consent to the representation.

### Conclusion

Whether Mr. Dunham represented no party and acted as a third-party neutral, or he represented everybody, he is disqualified from now representing the Karayanises in an action against the Debtors without their informed consent.  The Court is sympathetic to Mr. Dunham's position.  He testified that he was very uncomfortable at the thought of being in the middle of the negotiations with the Karayanises and Mr. Prabhaker.  He felt that he had a possible conflict of interest, given his prior relationship with the Karayanises and the "fiduciary" relationship that he felt he had with Mr. Prabhaker.  He testified that this is why he informed the parties, before negotiations ever began, that he would not be representing anybody.  Mr. Dunham did everything he could have and should have done to properly make himself a third-party neutral at the negotiations.[1]  Mr. Dunham also properly represented all of the parties' interests in drafting

---

[1] *See* ILL. RULE OF PROF'L CONDUCT cmt. 3 (2010):

> Unlike nonlawyers who serve as third-party neutrals, lawyers serving in this role may experience unique problems as a result of differences between the role of a third-party neutral and a lawyer's service as a client representative. The potential for confusion is significant when the parties are unrepresented in the process. Thus, paragraph (b) requires a lawyer-neutral to inform unrepresented parties that the lawyer is not representing them. For some parties, particularly parties who frequently use dispute-resolution processes, this information will be sufficient. For others, particularly those who are using the process for the first time, more information will be required. The lawyer should inform unrepresented parties of the important

the lease, learning only at the very end that Mr. Prabhaker would not be signing the lease.  Had

he known earlier, he testified that he would have represented only the Karayanises' interests, but

because his friend was also involved in the other side (or so he believed), he testified that he

represented Mr. Dhillon "to the extent that he was a partner" with Mr. Prabhaker.

The Court is troubled by the possibility that Mr. Dunham could be called as a witness in

this dispute in the future.  The Court notes the comment of Mr. Prabhaker's counsel, who

considered the instant motion another effort by the Debtors to stall the case.  The Debtors have

hindered the progress of this case long enough.  The Court will not create an opportunity for

further delay by having to revisit this issue in the future should Mr. Dunham be called as a

witness, nor will the Court tolerate any other delays caused by the Debtors.

SEE ORDER ENTERED THIS DATE.


ENTERED: August 18, 2011

/s/ Laura K. Grandy
_____
UNITED STATES BANKRUPTCY JUDGE/8

---

differences between the lawyer's role as third-party neutral and a lawyer's role as a client representative, including the inapplicability of the attorney-client evidentiary privilege. The extent of disclosure required under this paragraph will depend on the particular parties involved and the subject matter of the proceeding, as well as the particular features of the dispute-resolution process selected.